UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FOLLOWING:<br><br>■ 39 Hallock Street, First Floor, New Haven, Connecticut | Case No. 3:24mj687(SDV)<br><br>**Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Evan Poisson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (hereinafter the "FBI") and have been since August 2023. I am a graduate of the FBI Training Academy in Quantico, Virginia where I received training in interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics. Before joining the FBI, I was a police officer in Fairfax County, Virginia for seven years. My current assignment is the Safe Streets Gang Task Force in New Haven ("Task Force"), which includes members of local, state, and federal law enforcement.

2. During my time as an FBI special agent, I have participated in numerous criminal investigations, including investigations into narcotics trafficking, firearms trafficking, and gang-related criminal activities. My participation in these investigations has included assisting in the controlled purchase of narcotics utilizing confidential informants and cooperating witnesses; participating in the execution of search and arrest warrants; conducting electronic and physical surveillance; analyzing records related to narcotics trafficking; reviewing and analyzing cellular records and cell site information; and interviewing individuals and other members of law enforcement regarding criminal activity. I have assisted in investigations into organized criminal

enterprises, including violent street gangs and large-scale narcotics trafficking organizations. Finally, I have participated in investigations involving the use of court-authorized interception of wire and electronic communications.

3. Based on my training and experience, I am familiar with methods employed by members of violent criminal enterprises ("VCEs") and drug trafficking organizations ("DTOs") in furtherance of their illegal businesses. I am familiar with the manner and means commonly employed by narcotics traffickers, firearms traffickers, members of criminal street gangs, and members of criminal organizations to communicate and to otherwise facilitate and carry out criminal activity and avoid detection by law enforcement. I am also aware of efforts those involved in crime make to thwart or detect surveillance, both physical and electronic.

4. I submit this affidavit in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41, to search a bedroom within an apartment located at 39 Hallock Street, First Floor, New Haven, Connecticut (the "Target Location"). The Target Location is within a three-story, multi-family building with one apartment per floor. The exterior is red brick with white vinyl on the front near a common door. That door is white with "39" in black on the right side of the door. To the right, once inside that door, there is stairway leading up. In front when one enters is a door to the first unit. The Target Location is the bedroom of MODESTE ADODO, who has been the subject of an FBI investigation by the Safe Streets Task Force in Bridgeport and for whom the Court issued an arrest warrant. ADODO's bedroom is in the back of the first-floor unit in the Target Location. The bedroom was identified by ADODO's mother and sister as the bedroom where he sleeps. As noted, this search warrant is for that bedroom only.

5. The facts in this affidavit are based on my training and experience, my participation in the arrest of ADODO, as well as on information relayed to me by agents and detectives who

have been part of the underlying investigation of ADODO and his co-conspirators.

6. Based on the facts set forth herein, I respectfully submit that there is probable cause to believe that the Target Location contains evidence of violations of Title 21 U.S.C. § 846 (Conspiracy and Attempts to Distribute Controlled Substances); and 21 U.S.C. § 841(a)(1) (Unlawful Possession with Intent to Distribute, Distribution and/or Manufacture of Controlled Substances) (collectively the "Subject Offenses").

7. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States (or magistrate court) that has jurisdiction over the offenses being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### III. FACTS AND CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

#### A. Background of the South End Gang VCE/DTO

8. In late 2021, the FBI Safe Streets Task Force in Bridgeport began investigating the distribution of narcotics and acts of violence by members of the so-called "South End Gang," a violent criminal enterprise (VCE) and drug trafficking organization (DTO) operating in the South End of Bridgeport, CT. ADODO is one of the South End gang targets who has been the subject of the investigation.

#### B. Title III Wiretap Investigation into the South End Gang

9. As part of the investigation into the South End Gang, the Task Force conducted a Title III wiretap investigation into nine target telephone numbers used by multiple associates of the South End Gang. The court's orders authorized surveillance over phones used by ADODO, among others. As of July 28, 2023, the wiretap investigation ceased. The wiretap led to evidence of ADODO's distribution of heroin and crack cocaine. Further, ADODO discussed his

3

possession of guns, and his transfer of guns to others, over intercepted communications. He also discussed his participation in gang activity and his knowledge of gang violence. After the wiretap concluded, the investigation included the execution of search warrants of various person's phones. In certain of those phones were text messages of ADODO concerning sustained drug activity. Specifically, ADODO communicated with a regular supplier who provided him with various narcotics, including crack cocaine and heroin/fentanyl. The supplier fronted ADODO drugs and ran a balance for him that was paid back over time. ADODO at times provided the supplier with distribution quantities of opioid pills. Agents from the Bridgeport Task Force conducted surveillance of ADODO as well as controlled buys directly from him of crack cocaine on several different occasions.

10. Within the last month, the FBI Task Force had a pen register device on a phone used by ADODO. The numbers in contact with that phone included known drug customers who were in contact with ADODO in drug-related conversations during the wiretap investigation. Investigators knew where certain of these drug customers lived and conducted surveillance of that residence, a place that has been the focus of law enforcement attention due to reports of suspected drug activity at that address. Investigators did trash pulls at that residence and found numerous items indicative of drug activity, including packaging with drug residue, stamped folds, needles, and crack pipes, among other items.

11. Also within the last month, ADODO and his car were seen by investigators at the aforementioned residence of his known drug customers. ADODO stayed at the location at least an hour under surveillance by law enforcement. ADODO visited that residence nearly daily during the wiretap investigation, after engaging in drug-related conversations with drug customers who lived there.

12.     At the time of the recent surveillance of ADODO at that residence, investigators knew that he was living at the Target Location.

### C. Probable Cause for ADODO's Bedroom in 39 Hallock

13.     On July 18, 2024, a United States Magistrate Judge issued an arrest warrant for ADODO and several co-defendants and co-conspirators based on an indictment returned by a grand jury. I am aware that ADODO was charged in that indictment with narcotics conspiracy and substantive narcotics offenses. Surveillance and other investigative techniques confirmed that ADODO was living at the Target Location with his mother, as noted above. I was part of the team assigned to execute the arrest warrant for ADODO. Other agents and I conducted surveillance of the Target Location when we first arrived around 5 AM this morning. ADODO's vehicle was parked out front. When given the command to execute the warrant at 6 AM, we surrounded the residence, entered the common door to the building, and called ADODO's phone number to alert him that there was a warrant for his arrest. A short time later, he opened the front door to the Target Location and was taken into custody.

14.     I then spoke to ADODO's mother and sister who were on scene to tell them of the arrest warrant for drug-related charges. I told them, based on the investigation, of my concern that there may be fentanyl in the Target Location. The sister is the leaseholder, and when asked, she consented to a search by a drug dog of the Target Location and signed a consent form. The sister and mother identified the bedroom used by ADODO, and the mother told me that she regularly goes into the room to do laundry. The door to the bedroom was open at that time. A drug dog was brought into the apartment *except* for the bedroom identified as the one ADODO

uses.[1] The dog did not alert to the other areas of the apartment. I spoke with the mother thereafter who agreed to accompany us to the bedroom and allow us entry. The mother entered ADODO's bedroom with agents. We observed what appeared to be a scale and packaging material on the TV stand. The packaging material was stacked on top of a box that contained glassines that are used for the packaging of drugs including fentanyl and heroin. We then secured the apartment to seek a search warrant for the bedroom.

## TRAINING AND EXPERIENCE OF THE AFFIANT

15.  Based upon the totality of the facts and circumstances set forth herein, and based on my training and experience and consultations with fellow law enforcement officers, I know the following:

a. that narcotics traffickers must maintain on hand U.S. currency in order to maintain and finance their ongoing narcotics business and often maintain that cash in their residence, vehicle and/or stash location;

b. that narcotics traffickers maintain books, records, receipts, notes, ledgers, money orders and oth er papers relating to the transportation, receipts, sale, and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where traffickers have ready access to them -- frequently at their residences and stash houses, including in safes, storage units and garages at those locations;

c. that persons involved in narcotics trafficking conceal in their residences, vehicles, and stash houses, including safes, garages and locked containers caches of drugs, scales, drug

---

[1] The decision not to run the dog through the bedroom used by ADODO was that of the dog handler and not ADODO's mother or sister who had signed a consent to have the dog run through the entire apartment.

    packaging materials, cutting agents and diluents, large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions; and the evidence of financial transactions relating to obtaining, transferring, secreting or spending sums of money made from narcotics trafficking activities;

d. that it is common for narcotic traffickers to hide contraband, proceeds of drug sales and records of drug transactions and documents relating to acquisition and disposition of assets in secure locations within their residences, vehicles, and stash houses, including attached and detached garages, safes, and secure containers for ready access and for concealment of these items from law enforcement authorities;

e. that narcotic traffickers commonly maintain addresses or telephone numbers in books, papers, cellular telephones, or electronic organizers, which reflect names, addresses and/or telephone numbers of their clients and associates in the drug trafficking organization. Traffickers also maintain photographs and videotapes of participants and associates in narcotic trafficking activity, and property acquired as a result of narcotics trafficking activities. Drug distributors also communicate with their criminal associates frequently via text message and also various encrypted applications such as WhatsApp and they frequently make use of and maintain multiple cell phones to compartmentalize operations and upon which those text messages and encrypted communications often remain stored; and

f. that narcotic traffickers commonly have in their possession, or at their residences, vehicles, or stash locations, including in garages, safes and locked containers at those residences, firearms or other weapons that are used to protect and secure a drug trafficker's property.

7

## CONCLUSION

16. Based on the evidence as a result of the investigation in this case, there is probable cause to believe and I do believe that the Target Location, specifically the bedroom used by ADODO, which is more fully described in Attachment A, contains contraband, fruits, instrumentalities, and evidence of the Subject Offenses, as more particularly described in Attachment B.

_____
EVAN POISSON
Digitally signed by EVAN POISSON
Date: 2024.08.05 10:15:03 -04'00'

**SPECIAL AGENT EVAN POISSON**
**FEDERAL BUREAU OF INVESTIGATION**

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 (via telephone) SDV this 5th day of August 2024 at Bridgeport, Connecticut.

_____
SDV

**S. DAVE VATTI**
**UNITED STATES MAGISTRATE JUDGE**
**DISTRICT OF CONNECTICUT**

## ATTACHMENT A-1

### Property to Be Searched

The rear bedroom in the first-floor unit of 39 Hallock Street, First Floor, New Haven, Connecticut (the "Target Location"). The Target Location is within a three-story, multi-family building with one apartment per floor. The exterior is red brick with white vinyl on the front near a common door. That door is white with "39" in black on the right side of the door. To the right, once inside that door, there is stairway leading up. In front when one enters is a door to the first unit. There are three bedrooms in the unit; the Target Location is the bedroom at the rear of the unit.

## ATTACHMENT B

### Particular Things to be Seized from the Target Location

The following items evidencing violations of 21 U.S.C. §§ 841(a)(1), and 846 (possession with intent to distribute and distribution of controlled substances and conspiracy) specifically:

a. Any controlled substance (all of which could be in any form) and items containing residue of controlled substances;

b. Paraphernalia used and commonly associated with the possession and distribution of controlled substances, including, but not limited to: scales, blenders, packaging materials (including plastic baggies, plastic or glass vials), heat sealing machines, pipes, grinders, funnels, presses, sifting screens and/or strainers, and any materials used for "cutting" or diluting controlled substances;

c. Any books, records, receipts, notes, ledgers, journals, travel documents and other papers relating to the purchase and distribution of controlled substances;

d. Bank statements, tax records, financial statements and records, safe deposit keys, storage unit keys, receipts, and other books and records, including any related to the purchase of real property and personal property (including automobiles, boats, jet-skis, snowmobiles, motorcycles and all-terrain vehicles), and, in general, any records or documents evidencing the obtaining, transfer, concealment, or expenditure of money or other assets, and/or demonstrating the laundering or use of monies generated by the sale of controlled substances.

e. United States currency, stocks, bonds, certificates of deposit, any other financial instruments, money counters, and the contents of any safes or other security type boxes or locked boxes and containers, including any jewelry, precious metals and gems, such as gold, silver and diamonds evidencing the obtaining, transfer, concealment, or expenditure of money or other assets, and/or demonstrating the laundering or use of monies generated by the sale of controlled substances;

f. currency counters;

g. Photographs of people, assets, or objects that may be related to the purchase and distribution of controlled substances;

h. Personal effects tending to establish proprietary interest, including but not limited to, personal identification, driver's licenses, vehicle registration certificates, passports, birth certificates and deeds;

i. Records of travel in furtherance of the unlawful distribution of drugs;

j. Records of any communications relating to drug trafficking;

k. cellular telephones.

l. firearms and firearm-related items, including ammunition, magazines, laser sights, containers